### ROBERT AND WILLIAMS *vs.* COMMERCIAL BANK.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

The authority of an attorney at law extends to all the means necessary to the protection and promotion of the interests of his client, so far as they are *affected by the proceedings in court* ; but he cannot enter into an agreement with the members of the bar *not to try causes* for a certain time, which would be binding on his client, and preclude him from having his cause set for trial, by employing other counsel.

An agreement among counsel, that they will *not* try causes during the summer and early fall months, is not *legally binding* on the parties to it. If a cause is afterwards set for trial by the original counsel, at the instance of the client, the court will disregard his general promise, and allow him to proceed.

Damages allowed on the return of protested bills include all charges, such as premium, cost of protest and postage. The holder can claim *interest* on those damages, but is not entitled to the *difference of exchange.*

This is an action instituted on the following check or bill of exchange :

" *Commercial Bank of New-Orleans, May* 6, 1837.

" Pay to the order of C. A. Jacobs, on the 24th May, 1837, (without grace) five thousand six hundred and twenty-five dollars."        (Original acceptance waived.)

" EDWARD DUPLESSIS, Cashier.

" *To D. Thompson, Esq.,*

*Cashier Bank of America, New-York.*"

Endorsed :

" Pay to Messrs. Carroll, Hawkins & Logan, or order.

" C. A. JACOBS."

" Pay to Howell L. Williams, or order.

" CARROLL, HAWKINS & LOGAN."

EASTERN DIST.
*May,* 1839.

ROBERT ET AL.
*vs.*
COMMERC'L B'K.

Demand of payment was made on the 24th May, 1837, by a notary, who states in his protest, that he presented the original bill, at the Bank of America, in New-York, to the paying teller, and demanded payment, who answered that " they could not pay it, for want of funds for that purpose ;" and it was accordingly protested for non-payment.    On the 9th June following, it was presented by a notary to the Commercial Bank of New-Orleans, who demanded payment thereof in specie, as well for the amount, as for premium paid, say eighty-four dollars and thirty-seven cents; protest, one dollar and fifty cents ;  postage, seventy-five cents ; interest due, at 7 per cent. (New-York rate) per annum, say seventeen dollars and fifty cents ; and damages, at ten per cent., five hundred and sixty-two dollars and fifty cents, making in all the sum of six thousand two hundred and ninety-one dollars and sixty-two cents, which amount the cashier declared he was willing to pay in the current bank notes of the city, but would not pay it in specie, as the bank, in common with the others, had suspended specie payments.

Suit was instituted, and the defendants pleaded a general denial.

In the month of June, 1838, most of the members of the bar, practising in the District Court, signed an agreement, binding themselves not to have any causes in which they were concerned set down for trial after the first of July.

67 ·        VOL. XIII.

EASTERN DIST. One of the plaintiffs being in the city, disavowed this agree-
*May,* 1839. ment made by his lawyer, so far as regards this cause, and
ROBERT ET AL. employed other counsel.
*vs.*
COMMERC'L B'K.    The cause was set for trial on the 9th July, and the coun-
sel for the defendant notified thereof.  On the day of trial
he had left the city, and his brother, also a member of the
bar, moved for a continuance, which was overruled, and the
cause proceeded to final judgment, in favor of the plaintiffs,
for the amount of their demand.  The defendants appealed.

*Canon,* for the plaintiffs, urged the affirmance of the
judgment.

*C. M.* and *F. B. Conrad,* for the appellants.

1 . The court below erred in refusing the continuance
prayed for by defendants, and their bill of exceptions on that
point must be sustained, and the cause remanded to be pro-
ceeded in according to law.   The plaintiff was bound by the
written agreement of his counsel, on file, to continue the
cause, and if he has sustained any damage thereby, he has
no action against his attorney.   The law necessarily vests
counsel with a large discretion over a suit, and the authori-
ties on this subject extend that discretion even much further
than it is contended for in this case.    *Paxton* vs. *Cobb,*
2 *Louisiana Reports,* 140.    6 *Cowan's Reports,* 386.    1 *Wen-
dell's Reports,* 108.    16 *Johnson's Reports,* 53.

2. On the merits, the court below was clearly wrong :
1st, in granting judgment for the amount of the premium on
the bill, the damages being given by law in lieu of the
return premium (1 *Moreau's Digest,* 93 ; *Bailey on Bills,*
375) ;  2d, in granting interest, at 7 per cent., from the 24th
May to 9th June, 1837, on the aggregate amount of the bill,
damages, costs of protest and postage ;  3d, in allowing
interest from the 9th June, till paid, at 10 per cent. on the
like amount of the bill, damages and expenses, as well as on
the interest which had accrued between the 24th May to
9th June, thus making defendants pay compound interest.

*Rost, J.,* delivered the opinion of the court.

The plaintiffs claim from the defendants the amount of a check, or bill of exchange, drawn by the said defendants upon the Bank of America, in New-York, and returned unpaid ; they also claim ten per cent. damages and interest, according to the laws of New-York, the premium paid for the bill, the cost of protest in New-York, and postage.

The petition contained the usual averments of demand, protest and notice, and further alleges, that the returned bill was duly presented to the defendants and payment demanded in specie, and upon the refusal to pay, that it was protested, whereby the defendants became liable, under their charter, to pay interest at the rate of ten per cent. per annum, which the plaintiffs also claim, together with the costs of the second protest.

The defendants, by their counsel, came into court, admitted in their answer that they had drawn the bill, and denied all the other allegations of the petition.

After issue joined, a large number of members of the New-Orleans bar, among whom were the counsel for both plaintiffs and defendants, entered into the following agreement :

" We, the undersigned, members of the bar, agree that we will not fix any case for trial from and after this date, until the first Saturday in November next, nor will we take any step in any case not usually taken in vacation, unless by consent of all parties interested therein. This agreement to bind the undersigned towards each other, but not to any members of the bar who may refuse to sign it."

During the existence of this agreement, one of the plaintiffs went into court in person, had the case set for trial, discharged his counsel, and intrusted the management of the suit to another, who had not become a party to the agreement.

When the case was called for trial, the defendant's counsel moved for a continuance, alleging the aforesaid agreement, and stating on oath, that on the faith of it they had not prayed for a jury, which, under the regulations of the court, would have had the effect of continuing the case

EASTERN DIST. until the month of November following; and also, that their
*May,* 1839. regular counsel had left the state for the summer months.

ROBERT ET AL.   The court overruled the motion, and the defendants ex-
*vs.*
COMMERC'L B'K. cepted. Judgment was given in favor of the plaintiffs,
agreeably to the prayer of their petition, and the defendants
appealed.

We are satisfied that the court did not err in ruling the
defendants to trial. Admitting, as decided by this court in
the case of *Paxton* vs. *Cobb,* 2 *Louisiana Reports,* 140, that
the authority of the attorney extends to every thing neces-
sary to the protection and promotion of the interests intrusted
to his care, so far as they are to be affected by the proceed-
ings in the court where he represents his client, it cannot
be seriously contended that the agreement entered into in
this instance was necessary to the protection and promotion
of the plaintiff's interest, or that it had any other object than
the personal convenience of gentlemen of the bar. It was
made with a view not to try cases during the summer
months, as had been the custom heretofore, by the joint con-
sent of the bench and the bar. Such an agreement was not
legally binding upon the parties to it; and if the original
counsel of the plaintiffs had set the cause for trial himself,
the court would have disregarded his general promise not to
do so, and would have permitted him to proceed. All that
the court could have done would have been to protect the
defendants from surprise, in consequence of the breach of
the agreement. What the original counsel of the plaintiffs
could have done, his clients had the right to do. They
could take the management of the suit from him at any
time, and conduct it in their own way. The motion for a
continuance was not made on the ground of surprise. If the
regular counsel of the defendants was absent, they had other
counsel in court, who appear to have done full justice to
their cause; and the allegation that, if it had not been for
the agreement, they would have prayed for a jury, and
thereby prevented the plaintiffs from recovering what is
justly due them until the ensuing fall, cannot be listened to.

The plaintiffs have made out their case satisfactorily, but

*The authority of an attorney at law extends to all the means necessary to the protection and promotion of the interests of his client, so far as they are affected by the proceedings in court; but he cannot enter into an agreement with the members of the bar not to try causes for a certain time, which would be binding on his client, and preclude him from having his cause set for trial, by employing other counsel.*

*An agreement among counsel, that they will not try causes during the summer and early fall months, is not legally binding on the parties to it. If a cause is afterwards set for trial by the original counsel at the instance of the client, the court will disregard his general promise, and allow him to proceed.*

we think the court erred in allowing the premium paid for the bill, the costs of protest in New-York, and the postage. Although contrary decisions may be found on this subject in the courts of the Atlantic states, the better opinion seems to be there, that the damages allowed on the return of protested bills are inclusive of all charges, and that the plaintiff is entitled to interest on those damages, but can claim nothing for the difference of exchange.    However this may be, the rights of the plaintiffs do not rest with us upon immemorial custom; they are defined and fixed by a statute which provides that the drawer of an inland bill, returned unpaid, shall pay and discharge the contents of the bill, together with ten per cent. for the damage thereof.    It is evident that the premium paid, the costs of protest, and all other charges, form a part of the damages fixed by law.    The statute will bear no other construction; and the rule which it establishes appears to us simple and certain in its application, and well adapted to the interests of commerce.

EASTERN DIST.
*May,* 1839.

ROBERT ET AL.
*vs.*
COMMERC'L B'K.

Damages allowed on the return of protested bills include all charges, such as premium, cost of protest and postage.    The holder can claim *interest* on those damages, but is not entitled to the *difference of exchange.*

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be avoided and reversed; and, proceeding to give such a judgment as should have been given in the first instance:

It is further ordered, adjudged and decreed, that the plaintiffs recover from the defendants the sum of six thousand two hundred and five dollars, with interest at the rate of ten per cent. per annum, from the 9th of June, 1837, until paid, on six thousand one hundred and eighty-seven dollars thereof, and the costs of the District Court; those of the appeal to be paid by the plaintiffs and appellees.