THE PRESIDENT, DIRECTORS AND COMPANY OF THE BANK OF THE UNITED STATES *v.* JOHN AMI MERLE and others.

Notice of protest, left with a black servant, in the office of the person notified, is sufficient.

Notice of protest need not be sent by the mail which leaves on the day of the protest ; but it must be deposited in the post office in time to go by the first mail of the succeeding day.

Interest will be allowed on the amount of the damages on protested bills or notes.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*T. Slidell*, for the plaintiffs.

*F. B. Conrad*, for the appellant.

GARLAND, J. This is an action on three bills of exchange, amounting to $35,000, drawn by John A. Merle & Co., in favor of Alexander Caldwell, in the year 1837, on Howard & Merry of Boston, which were accepted, and protested for non-payment.

The plaintiffs claim the amount of the bills, with ten per cent damages, the costs of protest, and interest. The answer is a general denial on the part of the drawers and endorsers. The Commercial Court gave a judgment in favor of the plaintiffs, from which the defendant, Caldwell, has appealed. He is the endorser, admits his signature, and bases his hope of relief at our hands on the insufficiency of the notice of protest.

One bill for $15,000 fell due on the 20th of May, 1837. It was protested on that day, and a notice deposited in the post office in Boston, directed to the agent of the Bank in New Orleans. The mail of the 20th of May from Boston arrived in New Orleans on the 5th of June following, and on the same day a notice was left in Caldwell's house. It was handed to a black female servant, in the office of the defendant, Caldwell, who said that he was not then at home.

Another bill for $10,000 became due on the 12th of June, 1837. It was protested on the same day, and a notice deposited in the post office in Boston, directed to the agent of the Bank in New Orleans. The mail of the 12th of June arrived in the latter city on the 28th of the same month, and on that day a notice to Caldwell, the endorser, was served in the same manner as the one of the 5th of June, before stated.

The third bill for $10,000 fell due on the 12th of July, 1837. It was also protested, and a notice deposited on the same day in the post office in Boston, directed as the other notices. The mail of the 12th of July arrived in New Orleans on the 27th of the same month, and that of the 13th on the 29th. On the latter day, a notice was handed to Caldwell, the endorser, in person.

It is urged by the counsel for Caldwell, that the service of the notices is not sufficient to bind him, as they were handed to a slave at his house and office, which were in the same building ; and he relies upon the decision of this court in the case of *Dufour* v. *Morse et al.*, 9 La. 333, to sustain him. There is a marked distinction between that case and the present. The evidence in that case was, that the notary's clerk went early in the morning to the defendant's house to deliver the notice. It was closed, the family not having risen from bed. He found a black man standing before the door, at which he had knocked several times, who seemed to be a servant of the house, who informed him that the white people were asleep, whereupon the clerk gave the notice to the man, requesting him to give it to the defendants, or one of them. On the part of the defendants, it was proved that there was not at the time a black servant in the house. The court very properly held that this was not a sufficient service of notice. The black man was not in the house, but in the street. It was proved that

he was not a servant belonging to, nor in the employment of the family ; and the probability is, that he was a loiterer, whose attention was attracted by so early a visitor, and who, finding the repeated knocks of the clerk at the door not heeded, reasonably concluded that the family were asleep, and so stated. The ground of the decision was, that the notice was not left in the house, nor with a person in the house, but given to one in the street, not shown to be in any manner connected with the family.

In this case, the appellant's counsel admits that if the notice had been laid on the appellant's table or desk in his house or office, or slipped under the door, if closed, it would have been sufficient to bind him ; but contends that as it was delivered to a black servant, presumed to have been a slave, in the house and office, it is insufficient. We do not think so. We cannot see the force of an argument which admits that if a notice be left on an inanimate object, it will be good, but if left with a human being possessed of senses and faculties, it is bad, merely because that being cannot exercise all the civil rights of a white person. The counsel, for the purpose of illustrating his argument, puts extreme cases, which proves that the position assumed is an extreme one. We are of opinion that the notices are sufficient, and that the defendant, Caldwell, must be bound by his endorsements.

For the bill falling due on the 12th of July, 1837, the defendant, Caldwell, says that he is not liable, as it is shown the mail of that day arrived in New Orleans on the 27th of the month, while the notice was not served until the 29th. The evidence shows that a mail for the South was accustomed to leave Boston in the morning, and again at six o'clock P. M. As the notary says that he put the notice in the post office on the 12th of the month, the defendant assumes that it was in time for the six o'clock mail, and consequently arrived here on the 27th, and that not having been served on that day or the next, he is discharged. It does not follow from the statement of the notary, that the notice was put in the office in time for the six o'clock mail. It was not necessary that it should have been, and the probability is it was not ; but that it was put in the post office late on the evening of the 12th, so as to go by the mail of the following morning. It is well settled, that if a bill be protested on a particular day, the holder or

notary is not bound to send the notice on that day, although a mail may leave the place, but that he is bound to deposit it in the post office in time to go by the first mail of the day following. It is shown that this was done in the present case, and we are of opinion that the defendant Caldwell is bound by it. 1 La. 122. Chitty on Bills, 513, 514.

The counsel of the appellant urges that the judgment must be reversed, because interest has been allowed on the damages which the plaintiffs are entitled to recover. This court held differently in *Robert, &c.* v. *The Commercial Bank*, 13 La. 528.

*Judgment affirmed.*